# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| JOAQUIN McCLAIN AND BRIESA McCLAIN, <br><br> Plaintiffs, <br><br> v. <br><br> SBC SHERIFF'S DEPARTMENT, et al., <br><br> Defendants. | No. ED CV 17-01178-CJC (PLA) <br><br> **ORDER DISMISSING THIRD AMENDED COMPLAINT WITH LEAVE TO AMEND** |

Plaintiffs filed a *pro se* civil rights action herein pursuant to 42 U.S.C. § 1983 on June 14, 2017. (ECF No. 1). The Complaint lists in the header "Joaquin McClain" as the "plaintiff in pro per." (*Id.* at 1). In the caption, however, Joaquin McClain and Briesa McClain are listed as plaintiffs. (*Id.*). No counsel has appeared on behalf of either plaintiff. Joaquin McClain ("Mr. McClain") filed a request to proceed *in forma pauperis* ("IFP"), which was subsequently granted. (ECF Nos. 3, 21). Briesa McClain has not sought leave to proceed in this action IFP, nor has she paid the filing fees. Each person wishing to raise claims in this action must either pay the filing fees or submit a request to proceed IFP. See, e.g., Pogue v. San Diego Superior Court, 2017 U.S. Dist. LEXIS 83529, at *3 (S.D. Cal. May 30, 2017) ("if multiple plaintiffs seek to proceed *in forma pauperis*, each plaintiff must qualify for IFP status"); Anderson v. California, 2010 U.S. Dist. LEXIS 114197, at *2, 2010 WL 4316996, at *1 (S.D. Cal. Oct. 27, 2010). In addition, since he is

not an attorney, Mr. McClain has no authority to appear on behalf of anyone else, including his wife or children, because he does not have standing to vicariously assert the claims of others. See Johns v. County of San Diego, 114 F.3d 874, 876-77 (9th Cir. 1997) ("a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer"); United States v. Mitchell, 915 F.2d 521, 526 n.8 (9th Cir. 1990) (*pro se* litigant does not have standing to raise the claims of other persons whose rights may have been violated); C.E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir. 1987) ("a non-attorney may appear *in propria persona* in his own behalf, but that privilege is personal to him," and he "has no authority to appear as an attorney for others"). Accordingly, because the only plaintiff before the Court is Mr. McClain, the Court has considered the sufficiency of the factual allegations only with respect to the constitutional claims of Mr. McClain.

Plaintiff's operative pleading herein is the Third Amended Complaint ("TAC"), filed on April 5, 2018. (ECF No. 28).[1] Because plaintiff is proceeding IFP in this civil action, the Court has screened the TAC pursuant to 28 U.S.C. § 1915(e)(2) prior to ordering service for the purpose of determining whether the action is frivolous or malicious; or fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. Section 1915(e)(2) applies to any civil action by a litigant who is proceeding IFP. See, e.g., Shirley v. Univ. of Idaho, 800 F.3d 1193 (9th Cir. 2015) (citing 28 U.S.C. § 1915(e)(2) and noting that a "district court shall screen and dismiss an action filed by a plaintiff proceeding *in forma pauperis*"); Lopez v. Smith, 203 F.3d 1122, 1127, n.7 (9th Cir. 2000) ("section 1915(e) applies to all *in forma pauperis* complaints" and "district courts [should] dismiss a complaint that fails to state a claim upon which relief may be granted") (en banc).

The Court's screening of the pleading under the foregoing statute is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable

---

[1] This case was transferred to the below signed Magistrate Judge on June 18, 2018. (See ECF Nos. 32, 34).

legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (in determining whether a complaint should be dismissed under 28 U.S.C. §1915(e)(2), courts apply the standard of Fed. R. Civ. P. 12(b)(6)). Further, with respect to a plaintiff's pleading burden, the Supreme Court has held that: "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. ... Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)). Since plaintiff is appearing *pro se*, the Court must construe the allegations of the pleading liberally and must afford plaintiff the benefit of any doubt. See Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). Finally, in determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678; see also Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) ("a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible").

After careful review of the TAC under the foregoing standards, the Court finds that plaintiff's allegations appear insufficient to state a claim against any named defendant. Accordingly, the TAC is dismissed with leave to amend. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (holding that a *pro se* litigant must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment).

**If Mr. McClain desires to pursue this action, he is ORDERED to file a Fourth Amended**

**Complaint no later than July 23, 2018, remedying the deficiencies discussed below. Further, plaintiff is admonished that, if he fails to timely file a Fourth Amended Complaint or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that the action be dismissed without further leave to amend and with prejudice.[2]**

In addition, if Briesa McClain wishes to raise any claims in a Fourth Amended Complaint, then she first must file a completed and signed Request to Proceed *In Forma Pauperis* with Declaration in Support.

## FACTUAL ALLEGATIONS IN THE TAC

Plaintiff resided with his family, including several children and a "Grandmother," in Hesperia, California. (ECF No. 28 at 15). On December 2, 2016, at around 14:30, Social Worker Bains and Social Worker Carney arrived at plaintiff's home "in response to an Immediate Response (IR) referral alleging physical abuse" to a child. (*Id.* at 16). Mr. McClain was inside the home, and he "acknowledged two females on the property." Defendants Bains and Carney told Mr. McClain "of their interest of [sic] his son," and Mr. McClain "required [sic] them to identify themselves." They provided their names. (*Id.* at 16). Bains "let herself and Carney into the yard" through a gate, and "walked towards the front door of residence [sic]." (*Id.* at 16). "Both parents approached the defendants from the doorway" and stated that they were "the parents." Bains and Carney entered the home. (*Id.*). Once inside, the social workers separated the two parents. Bains interviewed them about allegations of physical abuse, and the parents denied the

---

[2] Plaintiff is advised that this Court's determination herein that the allegations in the Third Amended Complaint are insufficient to state a particular claim should not be seen as *dispositive* of that claim. Accordingly, while this Court believes that you have failed to plead sufficient factual matter in your pleading, accepted as true, to state a claim to relief that is plausible on its face, you are not required to omit any claim or defendant in order to pursue this action. However, if you decide to pursue a claim in a Fourth Amended Complaint that this Court has found to be insufficient, then this Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to your right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

allegations. (*Id.* at 16-17). Carney walked "throughout the home as if she were looking for someone or something," which plaintiff alleges was a "search without a warrant," although it is not clear when this occurred or what basis plaintiff has for this knowledge. (*Id.* at 17). Carney received a call "from SBCSD, instructing social workers to exit the residence," which they did. They then "waited towards the front of the property." (*Id.*).

Within minutes, multiple patrol cars entered the property, and several officers entered the "residence without authorization" or presenting a warrant. (*Id.* at 17). Sergeant Hoffman opened a screen door and entered. (*Id.*). The officers separated the parents to investigate "child abuse." (*Id.* at 18). Briesa McClain was "detained inside the home, away from husband [sic]" and was questioned by "Hoffman and Johnston." (*Id.* at 18). Mr. McClain was detained and questioned by "Gary and Sandoval" "outside the residence." (*Id.* at 18). Although plaintiff states that he was "outside the residence," he also alleges that other officers searched plaintiff's home. (*Id.*).

Plaintiff alleges that Officer Hoffman provided "reasons why [the Sheriff's Department had] arrived with multiple police officers," including their belief that plaintiff and his wife were "possible cop killers." (*Id.* at 19). Mrs. McClain explained to Officer Hoffman that she owned a "legally registered gun" that was in a closet. (*Id.* at 18-19).

At "a little after 15:00," Mr. McClain was asked by Bernal if the officers could search the residence, and Mr. McClain "denied consent" and asked to see a search warrant. (*Id.* at 20). But Mr. McClain saw seven officers "inside the residence searching and scrutinizing." (*Id.*). Plaintiff alleges that the officers conducted an "unreasonable search of the entire premises, interior and exterior of [the] property, absent exigent circumstances." (*Id.*). At approximately 15:15, the two social workers, Bains and Carney, were escorted by Officer Bernal to the garage where plaintiff was "legally cultivating" cannabis in a separate "structure." (*Id.*).

Plaintiff alleges that Officer Hoffman "conspired" with social workers Bains and Carney and "confirmed the physical abuse allegations were unfounded," but threatened removal of all three children from the custody of their parents. (*Id.* at 21). Plaintiff also alleges that the officer "threatened felony arrest of child abuse" (*id.*), so it is not clear from the allegations of the TAC what plaintiff means by the allegation that defendants "confirmed the physical abuse allegations

5

were unfounded." Further, plaintiff alleges that the "investigation" that day was "fueled" by a "son/stepson" who suffered from "delinquent behavior" and "fabricated allegations." (*Id.* at 24-25). Plaintiff, however, does not allege that any defendant was aware at the time of the incident that the allegations made by the stepson were false.

Plaintiff alleges that, at approximately 15:50, Officer Hoffman "ordered" two other officers to obtain a search warrant. (*Id.* at 22). Prior to that, at approximately 15:40, Officer Gary filled out an "arrest/booking application" in the bedroom with Mrs. McClain. (*Id.* at 23). Further, plaintiff alleges that Officer Johnston "requested the warrant" from a judge at 16:25 on the same day. (*Id.* at 26).

In the family room, Officer Hoffman threatened Mr. McClain with arrest for "illegally cultivating more than six plants of cannabis," for being in "possession of a gun" (*id.* at 23), and for "felony child endangerment" (*id.* at 24). Mr. McClain argued with the officer and said that the gun belonged to his wife and also argued about the removal of the children. (*Id.* at 24-25). Mr. McClain was informed that the children could not stay in the house because cannabis was growing in the garage (*id.* at 24), and Bains and Carney told Mrs. McClain that the children could not stay in the house because of the plants in the garage (*id.* at 25).

Later, at approximately 17:00, the "family joined hands and prayed." (*Id.* at 26). Further, plaintiff "hugged and kissed" the children before he was arrested, and he "left instructions to [sic] his mother," so it appears that the children remained in the home until after the time that a warrant had been obtained. (*Id.*). Plaintiff and Mrs. McClain were "taken into custody by Bernal and Gary" at approximately 17:15. (*Id.* at 27). In addition, plaintiff alleges that the police car in which plaintiff was being transported after he was taken into custody stopped at a police station and picked up an unidentified warrant. (*Id.* at 27).

At an unspecified time, Social Workers Bains and Carney removed the children from the home. (*Id.* at 27-28). The children were placed into separate foster homes. (*Id.* at 28). Plaintiff alleges that a "Juvenile Dependency Petition" was signed by Bains on December 6, 2016. (*Id.* at 35). Plaintiff alleges that the document contains "false statements" and failed to include "exculpatory information." (*Id.*). This and other documents with "false, inaccurate, and incomplete

statements" were used in a "Detention Hearing" on December 7, 2016, at which the juvenile court ordered the children to continue in foster homes. (*Id.* at 38-39). The parents were in custody at the time of the December 7, 2016, Detention Hearing. (*Id.* at 39). Mrs. McClain was released, and she appeared at the juvenile dependency court on December 8, 2016. She informed a "court appointed attorney" that the officers did not have a search warrant, did not have "judicial authorization to remove her children," and that the Juvenile Dependency Petition was incorrect. (*Id.* at 39). Regardless, the children were ordered to remain in foster care. (*Id.* at 40).

Plaintiff remained in custody for 17 days, and a public defender informed the court that no warrant had been executed and the charges were "frivolous." However, Mr. McClain decided to accept a plea deal on December 19, 2016, and, in connection with the deal, the charges of "child cruelty and cultivation" were dropped. (*Id.* at 40-42). Plaintiff "sought remedy for malfeasance of defendants," provided proof to the state courts, and "contested the allegations." (*Id.* at 44-45). On September 20, 2017, a judge "confirmed the reason children were removed from [the parents'] care and custody was due to cannabis cultivation." (*Id.* at 54). Numerous other facts are alleged concerning the state court dependency proceedings, and plaintiff appears to allege that, at the time that he filed this action, the County was continuing to violate his rights. (*Id.* at 65).

## DISCUSSION

### A.  THE TAC FAILS TO STATE A SHORT AND PLAIN STATEMENT IN COMPLIANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 8.

The TAC fails to comply with Federal Rule of Civil Procedure 8(a) and 8(d). Fed. R. Civ. P. 8(a) states:

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) **a short and plain statement of the claim showing that the pleader is entitled to relief**; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

(Emphasis added). Rule 8(d)(1) provides: "Each allegation **must be simple, concise, and direct**. No technical form is required." (Emphasis added). Although the Court must construe a

*pro se* plaintiff's pleadings liberally, a plaintiff nonetheless must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. See, e.g., Brazil v. United States Department of the Navy, 66 F.3d 193, 199 (9th Cir. 1995); McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991) (complaint must give defendants fair notice of the claims against them). If a plaintiff fails to clearly and concisely set forth allegations sufficient to provide defendants with notice of which defendant is being sued on which theory and what relief is being sought against them, the complaint fails to comply with Rule 8. See, e.g., McHenry v. Renne, 84 F.3d 1172, 1177-79 (9th Cir. 1996); Nevijel v. Northcoast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981). A claim has "substantive plausibility" if a plaintiff alleges "simply, concisely, and directly [the] events" that entitle him to damages. Johnson v. City of Shelby, 135 S. Ct. 346, 347, 190 L. Ed. 2d 309 (2014). Moreover, failure to comply with Rule 8 constitutes an independent basis for dismissal of a complaint that applies even if the claims in a complaint are not found to be wholly without merit. See McHenry, 84 F.3d at 1179; Nevijel, 651 F.2d at 673.

First, plaintiff is admonished that, irrespective of his *pro se* status, he must comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Central District of California. See, e.g., Briones v. Riviera Hotel & Casino, 116 F.3d 379, 382 (9th Cir. 1997) ("*pro se* litigants are not excused from following court rules"); L.R. 1-3. Pursuant to Fed. R. Civ. P. 10, the caption of the pleading must include *all* defendants listed in the body of the pleading.

Further, the 122-page TAC lists nearly twenty individual defendants, including several officers with the San Bernardino County Sheriff's Department ("Sheriff's Department"); nine individuals identified as "social workers" or "supervisors" of "social workers" in two divisions of the "San Bernardino County Children and Family Services" in Fontana and Rancho Cucamonga; an individual identified as a Deputy County Counsel for the County of San Bernardino; and the County of San Bernardino ("County") and its Sheriff's Department and "Children and Family Services" ("CFS") agency. (ECF No. 28 at 2-14). Although plaintiff's factual allegations are lengthy (*id.* at 15-65), all of the claims raised in this action appear to arise from the incident on

December 2, 2016, and the subsequent child custody matter in state court. Plaintiff purports to allege only one federal claim against the individual defendants. (*Id.* at 66). Plaintiff, however, incorporates all of his factual allegations into this one "claim" and appears to rise the "claim" against all defendants. However, none of the numerous defendants is alleged to have participated in all parts of the alleged incident. Further, in this one "claim," plaintiff lists, *e.g.*, the First, Fourth, and Fourteenth Amendments; several provisions of state law; "parental rights"; a "right to privacy"; a right to "familial relations"; the Second Amendment; "procedural due process rights"; "prejudice and discrimination"; "substantive due process"; and the unlawful confiscation of a gun. (See *id.* at 66-72). Incorporating the entirety of the TAC's prolix and confusing narrative of facts into a single "claim" that appears to be raised against nearly 20 individual defendants, many of whom were not present for significant portions of the alleged events, fails to provide each defendant with notice of which defendant is being sued on what factual basis and on which of the multiple legal theories cited within this "claim." In order to state a federal civil rights claim against a particular defendant, plaintiff must allege that a specific defendant, while acting under color of state law, deprived him of a specific right guaranteed under the Constitution or a federal statute. See West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that **causes** the deprivation of which [the plaintiff complains].'" Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (emphasis and alteration in original)). As the Supreme Court has made clear, plaintiff must plead "more than labels and conclusions." Twombly, 550 U.S. at 555.

Here, the TAC fails to set forth a "short and plain statement" showing that each named defendant took an affirmative action, participated in another's affirmative action, or failed to perform an action that he or she was legally required to do that **caused** a specific constitutional deprivation of plaintiff's constitutional rights. Further, the prolixity of the TAC renders it difficult to determine which of the numerous factual allegations are alleged to have given rise to which of the various causes of action that plaintiff appears to be raising in his "Claim #1." See, e.g.,

McHenry, 84 F.3d at 1178. In addition, plaintiff's allegations that some defendants violated state law simply do not give rise to a federal civil rights claim.

To the extent that plaintiff may be purporting in the TAC to allege a federal civil rights claim arising from the violation of his Fourteenth Amendment right to the custody or care of his children, the Supreme Court long has recognized that the Fourteenth Amendment's Due Process Clause protects the liberty interest "of parents in the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000); see also Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (discussing "the fundamental liberty interest of natural parents in the care, custody, and management of their child"); Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833, 842-43 (9th Cir. 2010) (Fourteenth Amendment's Due Process Clause protects the liberty interest of a child in state custody from harm by social workers). To violate substantive due process, however, the government official "must act with such deliberate indifference to the liberty interest that their actions 'shock the conscience.'" Tamas, 630 F.3d at 844; see also County of Sacramento v. Lewis, 523 U.S. 833, 846-47, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (official conduct violates a party's substantive due process rights when the conduct "shocks the conscience"). A government official may constitutionally remove children from their families temporarily without judicial authorization only when the official has "reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant." Demaree v. Pederson, 887 F.3d 870, 878 (9th Cir. 2018).

Here, because plaintiff fails to set forth a "simple, concise, and direct" statement of each claim or claims he is raising against each named social worker, it is entirely unclear to the Court which of the many factual allegations in the TAC apply to each claim against which defendant. Further, the Court does not accept as true plaintiff's unsupported allegations that various defendants knowingly used false information in connection with the removal of plaintiff's children from their home. See, e.g., Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). In addition, it appears from the factual

allegations in the TAC that at least some of the social worker defendants may have had reasonable cause at the time to believe that the children were "in imminent danger of serious bodily injury." Mabe v. San Bernardino Cty., 237 F.3d 1101, 1106 (9th Cir. 2001). Additionally, it appears from the factual allegations that a warrant was obtained prior to the removal of the children from the home after plaintiff had been arrested.

Finally, to the extent that plaintiff is purporting to allege a federal civil rights claim against any of the social worker defendants arising from discretionary, quasi-prosecutorial decisions to initiate or pursue court dependency proceedings, such defendants are entitled to absolute immunity. See Miller v. Gammie, 335 F.3d 889, 898 (9th Cir. 2003) (en banc) (citing Meyers v. Contra Costa County Dep't of Social Services, 812 F.2d 1154, 1157 (9th Cir. 1987)). Here, it is not clear to the Court what the factual or legal basis is for each of plaintiff's claims against each of the nine defendants identified as social workers.

The Court is mindful that, because plaintiff is appearing *pro se* in this matter, the Court must construe the allegations of the TAC liberally and must afford plaintiff the benefit of any doubt. See, e.g., Alvarez v. Hill, 518 F.3d 1152, 1158 (9th Cir. 2008) (because a litigant was proceeding *pro se*, "the district court was required to 'afford [him] the benefit of any doubt' in ascertaining what claims he 'raised in his complaint'") (alteration in original). That said, the Supreme Court also has made clear that the Court has "no obligation to act as counsel or paralegal to *pro se* litigants." Pliler v. Ford, 542 U.S. 225, 231, 124 S. Ct. 2441, 159 L. Ed. 2d 338 (2004); see also Noll, 809 F.2d at 1448 ("courts should not have to serve as advocates for *pro se* litigants"). Further, the Court does not accept as true allegations that are merely conclusory or arise from unwarranted deductions of fact or unreasonable inferences. Cholla Ready Mix, Inc., 382 F.3d at 973; see also Chavez, 683 F.3d at 1108 ("a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible").

For these reasons, it is altogether unclear to the Court the number of federal civil rights claims that plaintiff is purporting to raise, what defendants he may be purporting to raise each of his federal civil rights claims against, and what the factual basis for each of plaintiff's federal civil

rights claims may be. Plaintiff must plead "factual content that allows the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555-56). A pleading that merely alleges "naked assertion[s] devoid of further factual enhancement" is insufficient to comply with Rule 8. Iqbal, 129 S. Ct. at 1949 (alteration in original, internal quotation marks omitted). If plaintiff wishes to proceed on any federal civil rights claim arising from any of the alleged facts in his TAC, plaintiff should set forth in a Fourth Amended Complaint a short and plain statement of each claim separately, specifying which defendant is being sued on what legal theory, arising from which facts.

Accordingly, the Court finds that the TAC fails to comply with Rule 8.

**B. THE TAC FAILS TO STATE A CLAIM AGAINST THE ENTITY DEFENDANTS.**

The TAC appears to be raising two claims pursuant to Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Plaintiff alleges in his "Claim #2," that the County "through its entities" the Sheriff's Department and the CFS, violated plaintiff's right to custody of the children, and his rights under the Fourth Amendment to be "secure in [one's] persons, houses, papers, and effects." (ECF No. 28 at 85). Plaintiff references other unspecified searches and unlawful seizures or arrests, which have allegedly resulted in lawsuits against unidentified County officials, and he lists various lawsuits (without mentioning any facts) from 1996, 2001, 2003, 2013 (id. at 90), and an Exhibit A (id. at 91; see ECF No. 28-1). But plaintiff's attached Exhibit A consists of copies of plaintiff's state tort claims arising from the incident on December 2, 2016, that gave rise to his claims herein. Plaintiff also references an alleged subsequent failure by the County to investigate the incident that gave rise to this claims herein. (ECF No. 28 at 91). In his "Claim #3," plaintiff incorporates all of the preceding paragraphs and alleges that the County and its entities violated plaintiff's rights under the "First, Fourth, and Fourteenth Amendments" including "familial relations, the right to privacy, the right to be secure [sic], and the rights to substantive and procedural due process, and the right to [sic] the equal protection clause." (Id. at 99-100).

In order to state a claim against a local government entity such as the County, plaintiff must allege that a specific constitutional deprivation was **caused** by the County's policy or custom. The Supreme Court held in Monell that a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694; see also Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) ("local governments are responsible only for their own illegal acts").

Here, plaintiff's TAC fails to set forth any factual allegations raising a reasonable inference that any specific policy or custom of the County was the "actionable cause" of any alleged constitutional violation. See Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1146 (9th Cir. 2012) ("Under Monell, a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but for and proximate causation."). In addition, liability against a local government entity may not be premised on isolated or sporadic incidents. See, e.g., Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); Thompson v. Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), overruled on other grounds, Bull v. City & County of San Francisco, 595 F.3d 964, 981 (9th Cir. 2010) (en banc). Plaintiff's TAC appears to allege facts pertaining to only the one allegedly unlawful search and seizure of plaintiff and his children. Plaintiff is unable to establish a claim pursuant to Monell arising from any failure of the local government entity to investigate the incident that gave rise to plaintiff's claims because actions that a government entity took or failed to take *subsequent* to the alleged violations cannot give rise to a reasonable inference that the County's actions at the time of the alleged violations of plaintiff's constitutional rights were *caused* by the County's traditional method of carrying out

a policy. Further, pointing to a random list of lawsuits against the County over a space of nearly 20 years, and without alleging facts in those other cases that are similar to the incident at issue herein, is entirely insufficient to raise a reasonable inference that the County had a custom or policy that *caused* any of the multiple constitutional violations alleged in the TAC.

Accordingly, the Court finds that plaintiff's TAC fails to raise a right to relief on any claim against the entity defendants "above the speculative level." Twombly, 550 U.S. at 555.

## C. RESPONDEAT SUPERIOR LIABILITY IS NOT AVAILABLE UNDER § 1983.

The TAC names multiple defendants who are identified as "supervisors" (see, e.g., ECF No. 28 at 2, 8, 10-12), and plaintiff appears to be attempting to hold them liable for an alleged failure to act in accordance with the responsibilities of their roles as supervisors. However, supervisory personnel are not liable under § 1983 on a theory of respondeat superior. See, e.g., Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). In Iqbal, 556 U.S. at 676, the Supreme Court reaffirmed that: "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." The Ninth Circuit subsequently has concluded that, at least in cases where the applicable standard is deliberate indifference, Iqbal does not foreclose a plaintiff from stating a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). Thus, under Starr, 652 F.3d at 1207-08 (internal citations omitted, alterations and internal quotation marks in original):

> A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right."
> "The requisite causal connection can be established ... by setting in motion a series of acts by others," or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause

others to inflict a constitutional injury." "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."

Here, plaintiff's failure to clearly and concisely set forth factual allegations sufficient to provide each defendant notice of what claim is being raised on which grounds and what factual allegations support each claim renders it impossible for the Court to determine if plaintiff is purporting to hold any defendant liable for any alleged federal civil rights violation as a supervisor. As alleged in the TAC, it does not appear to the Court that any supervisor is alleged to have "set[]] in motion a series of acts" that they "knew or reasonably should have known" would cause their subordinates to inflict a constitutional injury. See Starr, 652 F.3d at 1207-08.

### D. THE ROOKER-FELDMAN DOCTRINE

The Rooker-Feldman doctrine, derived from two United States Supreme Court opinions, provides that federal district courts may exercise only original jurisdiction; they may not exercise appellate jurisdiction over state court decisions. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S. Ct. 149, 68 L. Ed. 362 (1923); Bennett v. Yoshina, 140 F.3d 1218, 1223 (9th Cir. 1998) (as amended). Review of state court decisions may be conducted only by the United States Supreme Court. See Feldman, 460 U.S. at 476, 486; Rooker, 263 U.S. at 416; see also 28 U.S.C. § 1257. Rooker-Feldman bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

The Rooker-Feldman doctrine applies even when the challenge to the state court decision involves federal constitutional issues. See Dubinka v. Judges of the Superior Court, 23 F.3d 218, 221 (9th Cir. 1994); Worldwide Church of God v. McNair, 805 F.2d 888, 891 (9th Cir. 1986); see also Branson v. Nott, 62 F.3d 287, 290-92 (9th Cir. 1995) (involving procedural due process

challenge to state court proceedings). Further, "Rooker-Feldman bars any suit that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims." See Bianchi v. Rylaarsdam, 334 F.3d 895, 901 (9th Cir. 2003) (internal quotation marks omitted). In addition, the Rooker-Feldman doctrine is applicable even if plaintiff's state court appeals are not final, as long as the state courts have resolved the issue that the plaintiff is seeking to litigate in a federal forum. See Mothershed v. Justices of the Supreme Court, 410 F.3d 602, 604 n.1 (9th Cir. 2005) (as amended); Worldwide Church of God, 805 F.2d at 893 n.3.

In analyzing whether it has jurisdiction[3] to hear a particular constitutional challenge, a federal district court first must determine whether plaintiff is attempting to bring a "forbidden de facto appeal." See Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013) ("To determine whether the Rooker-Feldman bar is applicable, a district court first must determine whether the action contains a forbidden de facto appeal of a state court decision."); Noel v. Hall, 341 F.3d 1148, 1163 (9th Cir. 2003). Such is the case "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." See Noel, 341 F.3d at 1164. If the court determines that plaintiff is attempting to bring a de facto appeal, then plaintiff also is barred from litigating any "issues that are 'inextricably intertwined' with issues in that de facto appeal." See Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859 (9th Cir. 2008) (Rooker-Feldman also applies where "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules."); see also Feldman, 460 U.S. at 483 n.16 (stating that "[i]f the constitutional claims presented to a United States District Court are inextricably

---

[3] Because the Rooker-Feldman doctrine proscribes federal court jurisdiction over collateral challenges to state court judgments, it cannot be waived, and the Court has an obligation to raise the issue *sua sponte*. See Worldwide Church of God, 805 F.2d at 890 (discussing appellate court's duty to raise jurisdictional issues *sua sponte*); see also, e.g., Jordahl v. Democratic Party of Va., 122 F.3d 192, 197 n.5 (4th Cir. 1997) ("district court appropriately *sua sponte* raised Rooker-Feldman").

intertwined with the state court's [decision], then the District Court is in essence being called upon to review the state court decision").

Here, many of plaintiff's allegations in the TAC appear to pertain to an ongoing state court action regarding plaintiff's parental rights. It is unclear to the Court whether the state court action has concluded, or if plaintiff is purporting to raise a claim herein that "asserts as a legal wrong an allegedly erroneous decision by a state court," nor is it clear if plaintiff seeks relief from a state court judgment based on that allegedly erroneous decision. See Bell, 709 F.3d at 897; Noel, 341 F.3d at 1164. However, if plaintiff is attempting to raise such a "de facto appeal," then plaintiff also is barred from litigating any "issues that are 'inextricably intertwined' with issues in that de facto appeal." See Reusser, 525 F.3d at 859.

The Court admonishes plaintiff, to the extent that any of plaintiff's claims purport to allege a legal wrong committed in a state judicial action, this Court lacks jurisdiction over a claim seeking relief from such state court action. See, e.g., Mittal v. Cty. of Clark, 716 Fed. Appx. 644 (9th Cir. Mar. 23, 2018) (holding that a district court had properly dismissed federal claims against Clark County and employees of the County's Department of Family Services because they constituted a "de facto appeal" of a prior state court judgment concerning state custody proceedings) (now citable for its persuasive value pursuant to Ninth Circuit Rule 36-3).

************

**If plaintiff desires to pursue this action, he must file a Fourth Amended Complaint no later than July 23, 2018;** the Fourth Amended Complaint must bear the docket number assigned in this case; be labeled "Fourth Amended Complaint"; and be complete in and of itself without reference to the original Complaint, the First Amended Complaint, the Second Amended Complaint, the Third Amended Complaint, or any other pleading, attachment or document. Further, if plaintiff chooses to proceed with this action, plaintiff must use the blank Central District civil rights complaint form accompanying this order, must sign and date the form, **must completely and accurately fill out the form**, and must use the space provided in the form to set forth all of the claims that he wishes to assert in a Fourth Amended Complaint.

The Clerk is directed to provide plaintiff with a blank Central District civil rights complaint

form.

**Further, plaintiff is admonished that, if he fails to timely file a Fourth Amended Complaint or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that the action be dismissed without further leave to amend and with prejudice.**

In addition, unless Briesa McClain pays the filing fees herein, or files a completed and signed Request to Proceed *In Forma Pauperis* with Declaration in Support, and her request for leave to proceed IFP is granted, Briesa McClain will not be able to pursue any claims in this action.

Moreover, if plaintiff no longer wishes to pursue this action, he may request a voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a). The clerk also is directed to attach a Notice of Dismissal form for plaintiff's convenience.

**IT IS SO ORDERED.**

DATED: June 21, 2018

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE